**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | * * * * | |
| Plaintiff | * * | |
| v. | * * | Case No.: RWT 07cv2612 |
| **BLOCKBUSTER INC.,** | * * | |
| Defendant and Third-Party Plaintiff | * * | |
| v. | * * | |
| **VENTURI STAFFING PARTNERS,** | * * | |
| Third-Party Defendant and Fourth-Party Plaintiff | * * * | |
| v. | * * | |
| **EXPRESS SERVICES, INC.,** *et al*., | * * | |
| Fourth-Party Defendants. | * * | |

## MEMORANDUM OPINION

Defendant and Third-Party Plaintiff Blockbuster, Inc. ("Blockbuster") moves the Court to reconsider its June 29, 2009 Order and hold that Blockbuster may proceed with a contractual claim for indemnification against Venturi Staffing Partners ("Venturi") for Venturi's alleged misconduct. Alternatively, Blockbuster seeks leave to file an Amended Third-Party Complaint against Venturi. For the reasons set forth below, the Court will deny Blockbuster's motion.

## BACKGROUND AND PROCEDURAL HISTORY

The Equal Employment Opportunity Commission ("EEOC") brought this action against Blockbuster alleging unlawful employment practices and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17.  The EEOC alleges that since at least December 2004, Defendant Blockbuster, acting through supervisors Thomas A. Johnson, Kofi TuTu, Lincoln Barrett IV, and other Blockbuster management personnel, subjected Charging Parties Lolita Gonzalez, Dolores Gonzales, and similarly situated female and/or Hispanic employees to a continuing course of unwelcome and offensive harassment on the basis of sex, race, national origin, and retaliation at Blockbuster's Gaithersburg warehouse facility. The EEOC claims that "Defendant had actual and constructive notice of the unlawful harassment and failed to take reasonable corrective action or action reasonably calculated to prevent the harassment."  Am. Compl. ¶ 18.

On November 14, 2008, Blockbuster filed a Third-Party Complaint (Paper No. 38) against Venturi.  The Third-Party Complaint asserts that Venturi entered into a contractual agreement with Blockbuster to provide temporary contractors to Blockbuster at its Gaithersburg warehouse facility, Third-Party Compl. ¶ 10, and that Venturi subcontracted its services to a third party known as Express Personnel, *id.* ¶ 13.  The Third-Party Complaint further alleges that:

20. Express Personnel had a harassment policy which required that complaints be brought to the attention of Express Personnel and Blockbuster to enable Blockbuster to take remedial action.

21. Express Personnel's office manager, Cynthia "Cinnie" Brown, took an active role in the administration and working arrangements of the temporary personnel assigned to the Gaithersburg facility.

22. As part of her duties, Ms. Brown received, processed, and investigated employee concerns and complaints, including complaints of sexual, racial and national origin, and retaliatory harassment and discrimination.

>    23. Express Personnel was also responsible for the discipline and termination of its employees who were assigned to the Gaithersburg facility.

*Id.* ¶¶ 20-23. Blockbuster contends that pursuant to a contractual agreement, "Venturi agreed to defend, hold harmless, and indemnify Blockbuster against any loss arising from any employment claim based on an allegation that Blockbuster is an employer." *Id.* at ¶ 11. Blockbuster alleges that if it "is found to be liable in whole or in part to the Plaintiff EEOC, then pursuant to the contractual relationship among the parties, Venturi is liable for indemnification to Blockbuster for *any liability* on its part to the EEOC." *Id.* at ¶ 33 (emphasis added).

Third-Party Defendant Venturi filed a Motion for Judgment on the Pleadings (Paper No. 50) on the issue of indemnification. Venturi argued that, *inter alia*, the contractual indemnity provision is void as against public policy and preempted by Title VII. On June 29, 2009, the Court conducted a hearing and granted Venturi's Motion for Judgment on the Pleadings.

On July 14, 2009, Blockbuster filed a Motion for Reconsideration of Order Granting Third-Party Defendant Venturi Staffing Partners' Motion for Judgment on the Pleadings and, in the Alternative, Motion for Leave to File Amended Third-Party Complaint ("Motion for Reconsideration") (Paper No. 89). Blockbuster requests reconsideration of the Court's June 30, 2009 Order (Paper No. 86), embodying the Court's June 29, 2009 oral disposition, insofar as Blockbuster seeks indemnification from Venturi for the subcontractor's misconduct, as opposed to any alleged misconduct of Blockbuster. Alternatively, Blockbuster seeks leave to file an Amended Third-Party Complaint.

## **INDEMNIFICATION**

Throughout its memoranda, Blockbuster uses the terms "indemnification" and "contribution" interchangeably. *See, e.g.*, Blockbuster Mot. for Reconsideration at 2 n.2 ("For

3

ease of reference, Blockbuster will refer to these claims, which are based on Section 6 and Section 9 of the Services Agreement, as claims for 'contribution,' even though (as discussed below and in the Motion) they include claims based on independent contractual duties, as well as for partial indemnification/contribution."). However, indemnification and contribution are not the same. Indemnification shifts the entire loss from one wrongdoer to another while contribution distributes losses among wrongdoers by requiring each to pay his proportionate share. *See Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1103 (4th Cir. 1989). Blockbuster's claims against Venturi are unequivocally for indemnification.

First, The Services Agreement between Blockbuster and Venturi contains provisions for indemnification, not contribution. Section 9.2 states that Venturi shall "protect, defend, hold harmless, and *indemnify* the Blockbuster *Indemnified* Parties."[1] *See* Proposed Amend. Third-Party Compl. Ex. A-1, § 9.2 (emphasis added). The plain language of this provision clearly concerns indemnification. Furthermore, section 6.1 of the Services Agreement neither suggests any right to contribution nor applies to any violation of Title VII. *See* Proposed Amend. Third-Party Compl. Ex. A-1, § 6.1. The Court refuses to read any right to contribution under this section or any other section of the Services Agreement.

Second, Blockbuster's Third-Party Complaint refers only to indemnification, *see* Third-Party Compl. ¶¶ 11, 28, 32, 33, and makes no mention of contribution. The Third Party Complaint's claims for indemnification are consistent with the language in the Services Agreement, and the proposed Amended Third-Party Complaint, which alleges that Venturi is liable for "partial indemnity and/or contribution," Proposed Amend. Third-Party Compl. ¶ 48, cannot cure this fatal flaw.

---

[1] Similarly, section 9.1 – which the Court interprets not to apply to claims arising under Title VII – states that Venturi shall "hold harmless and indemnify Blockbuster." *See* Proposed Amend. Third-Party Compl. Ex. A-1, § 9.2.

Third, the EEOC brought this action against Blockbuster only, *see* Amend. Compl. ¶ 4, alleging that Defendant, through three named employees as well as other unnamed management personnel, violated Title VII, *see* Amend. Compl. ¶¶ 8-25.  The EEOC did not sue Venturi or Express and the Court previously held that joinder under Fed. R. Civ. P. 19(a)(1)(A) was not required.  *See* Paper No. 36 at 2-3 (explaining that "[e]ither EEOC will be able to demonstrate that Blockbuster was the employer of the personnel that are the subject of EEOC's claims and obtain a judgment against it for damages and/or injunctive relief, or it will fail to do so, in which case Blockbuster will have no liability").  If Blockbuster is held liable, it can only be because Blockbuster subjected the Charging Parties to, or permitted the Charging Parties to be subjected to, unwelcome and offensive harassment and retaliation.  Because Blockbuster can be held liable only for its own violations of Title VII, the concept of contribution is inapplicable and Blockbuster cannot seek to distribute its loses.

Accordingly, Blockbuster's claims against Venturi are for indemnification rather than contribution.

## TITLE VII

The issue of whether Title VII bars a party's contractual claim for indemnification is a question of first impression in the Fourth Circuit.  However, courts within the Circuit have held that other federal statutes preempt similar claims for indemnification.

In *Baker, Watts & Co. v. Miles & Stockbridge*, plaintiff Baker, Watts & Company ("Baker, Watts"), after it was found to have violated federal and state securities laws, sought contribution and indemnification against a law firm that it had previously hired.  876 F.2d 1101, 1102-03 (4th Cir. 1989).  The Fourth Circuit held that the Securities Act of 1933, 15 U.S.C. 77a-77aa, does not preempt state law claims for contribution but does preempt state law claims for

indemnification. *Id.* at 1107-08. The Court explained that "it would run counter to the basic policy of the federal securities laws to allow a securities wrongdoer such as Baker, Watts to shift its entire responsibility for federal violations on the basis of a collateral state action for indemnification." *Id.* at 1108; *see also id.* ("[P]laintiff's wrongdoing has been plainly adjudicated, and a state action for indemnification would frustrate the basic enforcement of federal securities laws.").

Similarly, in *Equal Rights Center v. Archstone Smith Trust*, Judge Andre M. Davis held that the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") preempted third-party plaintiff Archstone's state law claims for breach of contract against an architectural services design firm. 603 F. Supp. 2d 814, 824 (D. Md. 2009). Judge Davis explained that "indemnification is antithetical to Congress' purpose in enacting the FHA and the ADA", *id.*, and that the goals of the ADA and FHA would be "undermined if parties could simply 'contract around' their responsibilities," *id.* at 825.

In light of these decisions disfavoring indemnification claims for violations of the federal Securities Act of 1933, the FHA, and the ADA, the Court concludes that Blockbuster's claims for indemnification for violations of Title VII are similarly barred. The Supreme Court has held that "[t]he language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). The primary goal of Title VII to eradicate discriminatory conduct would be thwarted if Blockbuster were permitted to contract around its obligations and shift its entire responsibility for complying with Title VII.[2] *Cf.*

---

[2] Of course, Venturi and Express would be liable to Plaintiff for their own violations of Title VII, if any, if the EEOC were to bring an action against them.

*Archstone*, 603 F. Supp. 2d at 825. Blockbuster therefore cannot seek contractual indemnification from Venturi or any other entity.

## BLOCKBUSTER'S PROPOSED AMENDED THIRD-PARTY COMPLAINT

Blockbuster alternatively seeks leave to amend its Third-Party Complaint against Venturi and assert claims for indemnity, partial indemnity/contribution, and breach of contract. Blockbuster's proposed amendment would be futile. *See Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007); Fed. R. Civ. P. 15(a)(2).

As discussed above, Blockbuster's claim for contribution is without merit because the Services Agreement contemplates indemnification only and Blockbuster's claims for indemnification are barred by Title VII. Blockbuster's new claim for breach of contract is a *de facto* claim for indemnification, and is similarly impermissible. The Court will therefore deny Blockbuster's request for leave to amend its Third-Party Complaint against Venturi.

## CONCLUSION

Accordingly, by separate order, the Court will deny Blockbuster's Motion for Reconsideration.

January 13, 2010           /s/
Date                       Roger W. Titus
                           United States District Judge